# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| The University of Chicago Medical Center, ) | |
| 5841 South Maryland Avenue ) | |
| Chicago, IL 60637-1470, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Civil Action No. _____ |
| Sylvia M. Burwell, Secretary, ) | |
| U.S. Department of Health and Human Services ) | |
| 200 Independence Avenue, S.W. ) | |
| Washington, DC 20201, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## COMPLAINT

Plaintiff, The University of Chicago Medical Center ("the Hospital"), by and through its undersigned attorneys, brings this action against defendant Sylvia M. Burwell, in her official capacity as the Secretary ("the Secretary") of the Department of Health and Human Services ("HHS"), and states as follows:

## A.   Preliminary Statement

1.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* ("the Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq.* Plaintiff seeks reversal of the May 14, 2014 and February 4, 2016 decisions of the Provider Reimbursement Review Board ("PRRB"), which are the Secretary's final decisions for purposes of judicial review and which dismissed for lack of jurisdiction six matters related to Medicare payment for indirect medical education ("IME") that the Hospital had included in its appeal to the PRRB of the Hospital's Medicare cost report for its fiscal year ending on June 30, 2002 ("FY

2002"). The PRRB's jurisdictional dismissals of these six IME payment-related matters were based on the Hospital's alleged failure to meet certain procedural requirements purportedly related to the appeal of the dismissed matters. The PRRB's decisions, however, are inconsistent with the PRRB's jurisdictional statute facially and as interpreted by the United States Supreme Court. Moreover, the PRRB's decisions are based, in part, on the clearly erroneous holding that two decisions issued by the United States Court of Appeals for the Seventh Circuit are "controlling precedent" for purposes of determining the PRRB's jurisdiction over the dismissed matters, even though the Hospital, which is located in Chicago, Illinois, was not a party in either of these Seventh Circuit cases and the Hospital has the explicit statutory right to bring this action in the United States Court of Appeals for the District of Columbia Circuit (as an alternative to the Seventh Circuit). Further, the PRRB did not question its jurisdiction over the dismissed matters in the Hospital's FYs 1996-1998 PRRB appeals, and there was no intervening change in the applicable statutes, or any judicial decision, to support the PRRB's change in position regarding its jurisdiction over these matters in the Hospital's FY 2002 appeal (the Hospital's challenges to similar jurisdictional dismissals regarding its FYs 1999-2001 appeals are pending in other actions before this Court (15-cv-00701-GK and 15-cv-01009-BAH)). The Hospital would receive significant additional IME payment if the PRRB is found to have jurisdiction over the six dismissed matters. Thus, the Hospital asks this Court to issue an order (a) reversing the PRRB's May 14, 2014 and February 4, 2016 decisions, (b) requiring the PRRB to accept jurisdiction over the six IME payment-related matters improperly dismissed from the Hospital's FY 2002 PRRB appeal, and (c) requiring the Secretary to recalculate the Hospital's FY 2002 Medicare payment after taking into account the six IME payment-related dismissed matters and pay the Hospital the additional amounts due, with interest under 42 U.S.C. §1395oo(f)(2).

**B.**     **Jurisdiction and Venue**

2.      This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §1361 (mandamus).

3.      Venue lies in this judicial district under 42 U.S.C. §1395oo(f) and 28 U.S.C. §1391.

**C.**     **Parties**

4.      Plaintiff University of Chicago Medical Center (Medicare Provider No. 14-0088) is a not-for-profit, acute-care teaching hospital located in Chicago, Illinois.  The Hospital is currently known as The University of Chicago Medical Center.  When its Medicare provider number was issued, however, the Hospital was known as the University of Chicago Hospitals, and this remains the name associated with its provider number.  The Hospital furnishes inpatient and outpatient hospital services including to patients entitled to benefits under the Medicare program and others.  The Hospital operates graduate medical education programs for residents in various specialty and sub-specialty areas, all of which qualify as approved medical residency programs eligible for Medicare reimbursement.

5.      Defendant Sylvia M. Burwell is the Secretary of the Department of Health and Human Services, the federal department which contains the Centers for Medicare & Medicaid Services ("CMS").  The Secretary, the federal official responsible for administration of the Medicare Program, has delegated the responsibility to administer that program to CMS.  Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA").  In this Complaint, the Hospital refers to the agency as CMS or HCFA interchangeably or, as appropriate, depending on the context.

**D.**   **General Background of the Medicare Program**

6.      The Medicare provisions of the Social Security Act, codified at 42 U.S.C. §§1395 *et seq.*, establish a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.   Pursuant to 42 U.S.C. §1395cc, the Hospital entered into a written agreement with the Secretary to provide hospital services to Medicare-eligible individuals.

7.      Hospitals are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare beneficiaries, in accordance with regulations adopted by the Secretary.   "Reasonable cost" is defined in the statute as the:

> cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services.

42 U.S.C. §1395x(v)(1)(A).

8.      In adopting reasonable cost regulations, the statute requires the Secretary to "take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, *the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered.*"   *Id.* (emphasis added).   The Medicare Act further requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services . . . [under Medicare] shall take effect unless it is promulgated by the Secretary by regulation . . . ."   42 U.S.C. §1395hh(a)(2).

9.      Based on delegated authority from the Secretary, CMS implements the Medicare program, in part, through the issuance of official Rulings.   *See* 42 C.F.R. §401.108.   In addition to the substantive rules published in the Code of Federal Regulations and the Rulings, CMS

publishes numerous other interpretive rules implementing the Medicare program, which are compiled in one or more of the CMS Manuals.

10.     Medicare payment to providers of services is commonly carried out by contractors acting as agents of the Secretary pursuant to contracts with her.  These contractors, which are now called "Medicare Administrative Contractors" ("MACs"), were formerly called Medicare Fiscal Intermediaries.  Each Medicare-participating hospital is assigned to a MAC.  At all times relevant to this action, the Hospital's MAC has been National Government Services, Inc. (previously known as AdminaStar Federal) ("the MAC").

**E.      The Cost Report Submission and Appeals Process**

11.     At the close of its FY, a hospital must submit a "cost report" showing the costs incurred during the FY and other data used to determine the Medicare reimbursement due to the hospital for the FY.  The hospital's MAC is required to analyze and audit the cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the FY.

12.     If a hospital is dissatisfied with its MAC's final determination of the hospital's total Medicare program reimbursement for a cost reporting period, as reflected in the NPR, it may seek to have the NPR corrected or altered in one of two ways:

a.      The hospital has a right to obtain a hearing before the PRRB by filing an appeal with the PRRB within 180 days of receiving its NPR.  42 U.S.C. §1395oo.

b.      The hospital may request reopening of a MAC's determination within three years of the date of notice to the hospital of the MAC's determination.  42 C.F.R. §405.1885.

13.     If a hospital's reopening request is granted, and there is a change in the hospital's Medicare payment, the MAC's updated Medicare payment determination is set forth in a

Revised NPR.  42 C.F.R. §405.1885(a).  The hospital has a right to obtain a hearing before the

PRRB if it is dissatisfied with the Revised NPR by filing an appeal with the PRRB within 180

days of the hospital's receipt of its Revised NPR.  42 U.S.C. §1395oo; 42 C.F.R. §405.1889.

14.     Regardless whether a hospital files a request for a PRRB hearing or seeks

reopening, regulations adopted by the Secretary require a MAC's determination to be reopened

within three years of the date of notice of the determination to the hospital if CMS provides

explicit notice to the MAC that the determination is "inconsistent with the applicable law,

regulations, CMS ruling," *etc.*  42 C.F.R. §405.1885(c)(1)(i).

**F.     PRRB Hearing Procedures and the Procedure for Administrative and Judicial Review of PRRB Decisions**

15.     The Medicare statute specifies the following requirements for a PRRB appeal:

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board . . . if –

(1) such provider . . . is dissatisfied with a final determination of . . . its fiscal intermediary . . . as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report . . .

(2) the amount in controversy is $10,000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination . . . .

42 U.S.C. §1395oo(a).

16.     Once jurisdiction for an appeal is established under 42 U.S.C. §1395oo(a), 42

U.S.C. §1395oo(d) grants the PRRB broad authority to decide all issues related to the provider's

cost report:

The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to

the Hospital of services) even though such matters were not considered by the intermediary in making such final determination.

42 U.S.C. §1395oo(d).   In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction.

17.     The decision of the PRRB on substantive or jurisdictional matters constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision.   42 U.S.C. §1395oo(f)(1); 42 C.F.R. §§405.1875 and 405.1877.   The Secretary has delegated her authority under the statute to review PRRB decisions to the CMS Administrator.

18.     A hospital may obtain judicial review of a final administrative decision, whether substantive or jurisdictional, by filing suit within 60 days of receipt of the final action on the administrative appeal in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.   42 U.S.C. §1395oo(f).   In any such action, the Secretary is the proper defendant because, under 42 C.F.R. §421.5(b), the Secretary, acting through CMS, "is the real party of interest in any litigation involving the administration of the [Medicare] program."   Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of a hospital that prevails in an action brought under 42 U.S.C. §1395oo(f).

19.     Judicial relief is available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.   *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

20.     When the Hospital filed its FY 2002 cost report on or about November 30, 2002,

CMS regulations stated:

> The provider (but no other individual, entity, or party) has a right to a hearing
> before the Board about any matter designated in § 405.1801(a)(1), if:
>
> > (1) An intermediary determination has been made with respect to the
> > provider; and
> > (2) The provider has filed a written request for a hearing before the Board
> > under the provisions described in § 405.1841(a)(1); and
> > (3) The amount in controversy (as determined in § 405.1839(a)) is
> > $10,000 or more.

42 C.F.R. §405.1835(a) (1998).   Also at that time, 42 C.F.R. §405.1801(a) defined an

intermediary determination as "a determination of the total amount of payment due the hospital,

pursuant to § 405.1803 following the close of the hospital's cost reporting period, under that

system [*i.e.*, the Medicare inpatient prospective payment system] for the period covered by the

determination."   This regulatory scheme did not limit PRRB jurisdiction to items claimed on the

cost report, in part because not all Medicare payment items could be validly claimed in the cost

report.  *See Bethesda Hospital Association v. Bowen ("Bethesda")*, 485 U.S. 399, 405 (1988).

Rather, a hospital merely had to be dissatisfied with the amount of total Medicare

reimbursement, file a hearing within the specified timeframe, and have at least $10,000 in

controversy, which the Hospital indisputably did with respect to its FY 2002 Medicare cost

report appeal.

21.     In 2008, CMS revised the regulations governing PRRB hearings and created new

restrictions on PRRB jurisdiction.   The previous standards were changed to require, for cost

reporting periods ending on or after December 31, 2008, that the provider either claim an item on

the cost report or self-disallow the item:

> A provider (but no other individual, entity, or party) has a right to a Board hearing, as a single provider appeal, *for specific items claimed* for a cost reporting period covered by an intermediary or Secretary determination, only if—
>
>> (1) The provider has preserved its right to claim dissatisfaction with the amount of Medicare payment for the specific item(s) at issue, by either— (i) *Including a claim for specific item(s) on its cost report* for the period where the provider seeks payment that it believes to be in accordance with Medicare policy; or (ii) Effective with cost reporting periods that end on or after December 31, 2008, self-disallowing the specific item(s) . . . .

42 C.F.R. §405.1835(a) (2008) (emphasis added).  This regulation, which by its own terms does not apply to the Hospital's FY 2002 PRRB appeal, is invalid because it is inconsistent with the statutory provision at 42 U.S.C. §1395oo(a) entitling a provider to a hearing if the provider is dissatisfied with the amount of its total Medicare reimbursement.

22.     Even if the 2008 regulations are valid, they cannot be applied to the Hospital's FY 2002 PRRB appeal because doing so would constitute improper retroactive application in violation of the APA and other authorities.  *See, e.g., Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988).

23.     Even if the 2008 regulations are valid and may be applied to the Hospital's FY 2002 PRRB appeal, the Hospital has complied with them.

**G.     Statutory and Regulatory Authorities Relating to IME Payments**

24.     Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the hospital inpatient prospective payment system ("IPPS") to reimburse hospitals, such as the Hospital, for inpatient hospital operating costs.  42 U.S.C. §1395ww(d).

25.     Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospital.  Rather, IPPS hospitals are paid predetermined, nationally applicable rates based on the diagnoses of the patient at discharge

categorized within one or more Medicare severity diagnosis-related groups ("MSDRGs"), subject to certain payment adjustments.  42 U.S.C. §1395ww(d)(1)-(5); 42 C.F.R. Part 412.

26.     One of these IPPS payment adjustments is the "indirect medical education" or "IME" adjustment.   The IME payment is designed to compensate hospitals for the overall increased costs associated with operating a teaching hospital.  42 U.S.C. §§1395ww(d)(5)(B) and (h).   In creating the IME adjustment, Congress considered several factors that contribute to increased overhead costs at teaching hospitals, *e.g*., increased demands placed upon staff participating in the education process, increased number of tests and procedures performed by residents as they learn their medical specialties, and teaching hospitals attract generally sicker patients and provide more specialized services, among other factors.   Congress required the Secretary to calculate teaching intensity for the IME adjustment based on the ratio of medical interns and residents (hereinafter "residents") being trained at the hospital to the available inpatient beds at the hospital.  *Id*.  Regulations adopted by the Secretary at 42 C.F.R. §412.105 elaborate on the calculation of IME payments.

a.     The IME payment is a percentage add-on to a teaching hospital's payments under IPPS. 42 U.S.C. §1395ww(d)(5)(B).   The "IME adjustment factor" is multiplied by the hospital's MSDRG payments for a FY to arrive at the IME reimbursement amount due for that FY.  *Id*

b.     The formula mandated by Congress for the calculation of the IME adjustment factor depends, in part, on the number of residents, which is defined as "the number of full-time equivalent residents," or "FTEs," which "shall equal the average of the actual full-time equivalent resident count for the cost reporting period and the preceding two cost reporting periods."   42 U.S.C. §1395ww(d)(5)(B)(vi)(II).   Accordingly, Medicare

payment for IME will vary depending on the number of residents in a hospital's residency training programs.

c. The IME payment formula also depends on the number of available inpatient beds.  *See* 42 U.S.C. §1395ww(d)(5)(B)(ii).  The Secretary is authorized to define available inpatient "beds" for IME payment purposes.  42 U.S.C. §1395ww(d)(5)(B)(vi)(I).  The Secretary defines "beds" as "the number of available bed days during the cost reporting period" divided by the "number of days in the cost reporting period."  42 C.F.R. §412.105(b).

27. Historically, the more resident FTEs that a teaching hospital trains in a cost reporting period, the higher the teaching hospital's IME payment would be.  However, for cost reporting periods beginning on or after October 1, 1997, Congress established a cap (or limit) on the number of a hospital's resident FTEs that can be counted for IME payment purposes.  The cap for a particular hospital is based on the hospital's number of FTEs during the most recent FY that ended on or before December 31, 1996.  42 U.S.C. §§1395ww(d)(5)(B)(v) and (h)(4)(F).  Thus, a hospital's correct IME payment depends on (1) the correct FTE count in its current FY, (2) the correct FTE counts in its previous two FYs (*see* Paragraph 26.b, above), and (3) the correct FTE count in FY 1996 "base year."

28. On March 23, 2010, Congress enacted the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119, 660 (2010).  ACA §5505 required the inclusion of vacation and leave time when calculating IME resident FTEs:

> [A]ll the time that is spent by an intern or resident in an approved medical residency training program on vacation, sick leave, or other approved leave, as such time is defined by the Secretary, and that does not prolong the total time the resident is participating in the approved program beyond the normal duration of the program shall be counted toward the determination of full-time equivalency.

ACA §5505(a)–(b).  ACA §5505(a) adds vacation time to the direct graduate medical education ("DGME") FTE count and ACA §5505(b) incorporates this DGME amendment into the IME statutory provision.  These changes to benefit hospitals were made retroactive to January 1, 1983.  ACA §5505(c).

## H.     FACTS SPECIFIC TO THIS CASE

29.     On or about November 30, 2002, the Hospital timely filed its FY 2002 Medicare cost report, which included a claim for IME payment.  On or about September 23, 2004, the MAC issued the Hospital's FY 2002 Medicare NPR, which included MAC audit adjustments to IME.

30.     On March 18, 2005, the Hospital timely filed notice of its appeal of its FY 2002 Medicare NPR with the PRRB.  By that letter, and subsequent correspondence with the PRRB, the Hospital challenged its IME payment for FY 2002 on several grounds, including the six matters that the PRRB ultimately dismissed for alleged lack of jurisdiction, which are at issue in this Complaint.

31.     The PRRB placed the Hospital's FY 2002 appeal in abeyance pending the outcome of litigation on an IME FTE issue in the Hospital's FY 1996 appeal.

32.     On February 8, 2007, the Hospital and the MAC partially settled the Hospital's FY 1996 PRRB appeal (the settlement did not include the IME FTE issue that was to be addressed in litigation).  Under the settlement, the MAC (a) added FTEs to the Hospital's FY 1996 DGME FTE count and (b) removed Clinical Research Center beds from the Hospital's IME bed count.  In partially settling the Hospital's FY 1996 appeal, the MAC did not question the PRRB's jurisdiction over the settled issues or any other aspect of the appeal.  Also, although the

PRRB reviewed and accepted the settlement agreement, the PRRB did not, *sua sponte*, question its jurisdiction over any aspect of the FY 1996 appeal, which it is explicitly permitted to do.

33.     The litigated IME FTE issue for FY 1996 was ultimately decided in the Hospital's favor by the Court of Appeals for the Seventh Circuit.  *Univ. of Chicago Med. Ctr. v. Sebelius*, 618 F.3d 739 (7th Cir. 2010).  After that decision was issued, (a) the MAC added FTEs to the Hospital's IME and DGME resident FTE counts (which caused the Hospital's IME and DGME FTE caps to increase) and the parties resolved the remainder of the FY 1996 appeal and (b) the PRRB removed all of the Hospital's appeals from abeyance, including the Hospital's FY 2002 appeal.

34.     On March 21, 2012, the Hospital and the MAC settled the Hospital's FY 1997 appeal.  Under the settlement, the MAC, taking into account the updated and increased caps, (a) added FTEs to the Hospital's IME and DGME resident FTE counts for FY 1997 and (b) removed Clinical Research Center beds from the Hospital's FY 1997 IME bed count.  As with the earlier settlement of the FY 1996 appeal, the MAC did not question the PRRB's jurisdiction over the settled issues or any other aspect of the FY 1997 appeal.  Also, although the PRRB reviewed and accepted the FY 1997 settlement agreement, the PRRB again did not question its jurisdiction over these issues or any other aspect of the FY 1997 appeal.  In fact, the signed settlement agreement for FY 1997 expressly stated that PRRB jurisdiction was proper.

35.     On March 26, 2012, the Hospital and the MAC settled the Hospital's FY 1998 appeal.  Under the settlement, the MAC, again taking into account the updated and increased caps, (a) added FTEs to the Hospital's IME and DGME resident FTE counts for FY 1998 and (b) removed Clinical Research Center beds from the Hospital's FY 1998 IME bed count.  As with the settlement of the FYs 1996 and 1997 appeals, the MAC did not question the PRRB's

jurisdiction over the settled issues or any other aspect of the FY 1998 appeal.  Also, although the PRRB reviewed and accepted the FY 1998 settlement agreement, the PRRB again did not question its jurisdiction over these issues or any other aspect of the FY 1998 appeal.  In fact, the signed settlement agreement for FY 1998 expressly stated that PRRB jurisdiction was proper.

36.    a.    The MAC's April 22, 2013 filing objected to the PRRB's jurisdiction in the Hospital's FY 2002 appeal over the Hospital's challenge to the MAC's inclusion of Clinical Research Center beds for IME payment purposes.  The MAC's subsequent April 23, 2013 filing objected to the PRRB's jurisdiction in the Hospital's FY 2002 appeal over the Hospital's challenge to the MAC's refusal to (1) include the correct amount of didactic and vacation time in the Hospital's IME FTE count, (2) include inadvertently omitted FTEs in the Hospital's IME FTE count, and (3) correct the carry-forward statistics from previous FYs for purposes of calculating the proper IME FTE count for FY 2002.

b.    The Hospital timely responded to both of the MAC's jurisdictional challenges in a single, combined filing dated May 21, 2013.

c.    In a letter dated May 14, 2014 (Exhibit 1 to this Complaint (without enclosures)), the PRRB dismissed from the Hospital's FY 2002 appeal for alleged lack of jurisdiction the Hospital's IME payment-related challenges to:  (1) Clinical Research Center beds, (2) didactic and vacation time used in the FTE count, (3) inadvertently omitted FTEs, and (4) "the carry-forward of prior year IME FTE count issues."

d.    In a letter dated July 16, 2015 (Exhibit 2 to this Complaint (without enclosures)), the PRRB reinstated "the IME FTE didactic issue" in the Hospital's FY 2002 appeal.

e.    In response to the Hospital's October 27, 2015 letter, in a letter dated February 4, 2016 (Exhibit 3 to this Complaint (without enclosures)), the PRRB dismissed from the Hospital's FY 2002 appeal for alleged lack of jurisdiction the Hospital's challenges to:  (1) the FTE cap that the MAC used to calculate the Hospital FY 2002 IME payment, and (2) the Prior Year (FY 2001) RBR that the MAC used to calculate the Hospital FY 2002 IME payment.

37.    By this Complaint, the Hospital challenges the PRRB's May 14, 2014 and February 4, 2016 decisions, which dismissed the following unreinstated six IME payment-related matters from the Hospital's FY 2002 appeal:  (1) Clinical Research Center beds, (2) vacation time used in the FTE count, (3) inadvertently omitted FTEs, and (4) "the carry-forward of prior year IME FTE count issues," including (5) the FTE cap and (6) Prior Year (FY 2001) RBR that the MAC used to calculate the Hospital FY 2002 IME payment.

I.    **The PRRB's May 14, 2014 and February 4, 2016 Jurisdictional Decisions Relating to IME Payment-Related Matters in the Hospital's FY 2002 Appeal Are Unlawful and Must Be Reversed.**

38.    The PRRB's May 14, 2014 and February 4, 2016 decisions in the Hospital's FY 2002 appeal are unlawful and must be reversed with respect to all six of the jurisdictionally dismissed IME payment-related matters because:

a.    The PRRB failed to address all of the arguments that the Hospital made in its oppositions to the MAC's jurisdictional challenges in the FY 2002 appeal.  For example, in dismissing the Clinical Research Centers beds matter in the Hospital's FY 2002 appeal, the PRRB did not address the many earlier PRRB decisions with which the Clinical Research Centers beds matter dismissal directly conflicts, including those holding that (a) the IME payment is not a "cost" that needs to be claimed in the cost report and (b) a specific audit adjustment is not a necessary prerequisite for PRRB jurisdiction.

b.      The first challenged jurisdictional decision was issued on May 14, 2014, which was almost 12 years after the close of FY 2002.  Both of the jurisdictional decisions challenged by this action were based on (a) the improper retroactive application of the 2008 regulations and (b) new interpretations by the PRRB of its authorities.  The application of the 2008 regulations and these new interpretations to the Hospital's FY 2002 appeal is improper because they are inconsistent with the PRRB's authorizing statute, more than 40 years of PRRB decisions, the APA, and other authorities.  Moreover, even if the Secretary could lawfully apply the regulations and new interpretations generally, they could not be applied to the Hospital's FY 2002 appeal because doing so would have an unlawful *retroactive* effect under *Georgetown, supra,* and other authorities.  Further, if the Secretary could lawfully apply the regulations and new interpretations retroactively, the Hospital met them.

c.      The MAC's first jurisdictional challenge was presented in the Hospital's FY 2002 appeal more than eight years after the Hospital filed that appeal.  This was long after the three-year period for the Hospital to seek corrective reopening of its FY 2002 NPR under 42 C.F.R. §405.1885(b)(2).  The MAC's long delay before presenting its jurisdictional challenges is inconsistent with PRRB practice and unreasonably prejudicial to the Hospital.  The Commentary to PRRB Rule 44.4 states in relevant part as follows:  "In most instances, the reasons for a jurisdiction challenge are apparent early in the case and early resolution preserves resources of all the parties and the PRRB.  The new regulations and these PRRB rules establish the expectation that MACs review and notify the PRRB of jurisdiction questions at least by the date of filing the first response to the appeal."  That did not occur here.

39.     The PRRB dismissed the Clinical Research Center beds matter because the Hospital allegedly failed to properly claim that matter in its FY 2002 submitted Medicare cost report.  The PRRB's May 14, 2014 decision is unlawful and must be reversed with respect to this matter because 42 U.S.C. §1395oo does not require a hospital to present particular matters to its MAC in its as-filed cost report as a jurisdictional prerequisite to a PRRB hearing.  Further, the Supreme Court held that the PRRB has the authority to review and revise a cost report with respect to matters that were not considered by a MAC, so long as the matter was covered by the cost report.  *Bethesda Hosp. Ass'n.*, 485 U.S. at 406.  IME payments are indisputably covered by the Medicare cost report.

40.     The PRRB's decision dismissing the Clinical Research Center Beds matter from the Hospital's FY 2002 appeal also is unlawful and must be reversed because the PRRB based its decision on two cases from the Seventh Circuit that the PRRB improperly applied as "controlling precedent."  These decisions are not "controlling precedent" because the Hospital was not a party in them.  Further, the Hospital has the statutory right under 42 U.S.C. §1395oo(f)(1) to seek judicial review of the PRRB's jurisdictional dismissals in either the Seventh Circuit or the D.C. Circuit and the D.C. Circuit has no similar precedent.  Moreover, not only have the two Seventh Circuit cases not been followed by the D.C. Circuit, the PRRB and the CMS Administrator also have not consistently followed the holdings in these cases.

41.     The PRRB dismissed the Clinical Research Center beds matter from the Hospital's FY 2002 appeal for alleged lack of jurisdiction because the PRRB found that the Hospital was not "dissatisfied" with the MAC's determinations of the number of beds used for purposes of calculating the Hospital's FY 2002 IME payment.  The PRRB's decision must be reversed as a matter of fact and law because the Hospital is, and has been, dissatisfied with the

MAC's failure to exclude Clinical Research Center beds when calculating the Hospital's FY 2002 IME payment.

a.     It is indisputable that Clinical Research Center beds should be excluded from the bed count that is used for purposes of calculating the Hospital's FY 2002 IME payment.  The MAC improperly failed to exclude the Clinical Research Center beds when calculating the Hospital's IME payments for FYs 1996-2004.  The MAC agreed to resolve the Clinical Research Center beds matter in the Hospital's FYs 1996-1998 PRRB appeals by excluding these beds from the IME payment calculation.  In doing so, the settlement agreements for these FYs explicitly stated that the PRRB had jurisdiction over the Clinical Research Center beds matter for those FYs.

b.     At the time the Hospital filed its FY 2002 appeal, it was not subject to the strict cost report presentation standard that the PRRB applied in dismissing this matter from the Hospital's FY 2002 appeal.  In fact, as recently as March 2012, the MAC willingly settled the Clinical Research Center beds matter without jurisdictional concerns expressed either by the MAC or the PRRB.  Moreover, the MAC stated in a filing before the PRRB in the Hospital's FY 2001 appeal that it "agrees to remove these beds [*i.e.*, the Clinical Research Center beds] from the IME computation, in accordance with the treatment of this issue in the Administrative Resolution of PRRB Case 01-0625 of this same Provider for FYE 6/30/1998."  The only intervening change was that the PRRB began interpreting its rules differently and has prejudicially and unlawfully applied its new interpretations retroactively to appeals filed long before (a) the adoption of the 2008 regulations and (b) the Hospital had notice of the new interpretation.

c.      The Hospital properly claimed IME and appealed its IME payments for FY 2002. This entitles the Hospital to a PRRB hearing over all aspects of the IME payment calculation for that FY, including the improper inclusion of Clinical Research Center beds in that calculation. The PRRB's jurisdiction dismissal of this matter in the Hospital's FY 2002 appeal was unlawful and contrary to its prior actions on this matter.[1]

42.    a.      The PRRB dismissed the remaining five IME payment-related matters, (1) vacation time used in the FTE count, (2) inadvertently omitted FTEs, and (3) "the carry-forward of prior year IME FTE count issues," including the (4) FTE cap and (5) Prior Year (FY 2001) RBR that the MAC used to calculate the Hospital FY 2002 IME payment, based on the Hospital's alleged failure to have timely appealed these matters.

b.      The PRRB's dismissal of these remaining five matters is unlawful and must be reversed because each was encompassed in the Hospital's March 18, 2005 appeal letter challenging "the total number of [FTE] residents used for purposes of calculating the Provider's [IME] payments." Furthermore, the Prior-Year RBR matter was also inherently part of the Hospital's appeal challenging the MAC's inclusion of Clinical Research Center beds in the FY

---

[1]  In the first sentence of the second paragraph on Page 10 of its May 14, 2014 decision, the PRRB states for the only time in the entire decision that, like the Clinical Research Center beds matter, the "IME FTE sub-issues" matter was dismissed because the Hospital allegedly did not include a proper claim for this matter in its submitted FY 2002 Medicare cost report. The PRRB's inclusion of the "IME FTE sub-issues" matter as one that was being dismissed for failure to file a proper claim appears to be a clear error because the PRRB did not make this point anywhere else in the decision. *See*, *e.g*., May 14, 2014 Dec. at 4-5 and 11. Accordingly, the Hospital does not believe it is necessary to discuss this apparent error in this Complaint. However, to the extent that the Secretary takes the position that this, in fact, was <u>not</u> an error and that the "IME FTE sub-issues" matter was dismissed because the Hospital allegedly did not include a proper claim for this matter in its submitted FY 2002 Medicare cost report, the Hospital (1) respectfully asks the Court to apply the points made in Paragraphs 39-41 of this Complaint (and elsewhere in this Complaint) regarding the Clinical Research Center beds matter to the "IME FTE sub-issues" matter and (2) reserves the right to amend this Complaint to address in more detail the Hospital's alleged failure to include "IME FTE sub-issues" matter in its FY 2002 Medicare cost report.

2002 IME payment calculation.  Moreover, in settling the Hospital's earlier PRRB appeals, the MAC agreed to (with the PRRB's acceptance) increase the Hospital's IME resident FTEs and exclude Clinical Research Center beds from the IME bed count.  Using correct information in cost report appeals is required under *Kaiser Found. Hosps. v. Sebelius*, 708 F.3d 226 (D.C. Cir. 2013).  It is not reasonable under the Medicare Act, the APA, and other authorities, for the PRRB to assert jurisdiction over some components of the IME calculation, but not others.  Also, the Hospital properly claimed IME and appealed its IME payment.  This entitles the Hospital to a PRRB hearing over all aspects of the IME payment calculation, including not only the remaining five IME payment-related matters, (1) vacation time used in the FTE count, (2) inadvertently omitted FTEs, and (3) "the carry-forward of prior year IME FTE count issues," including the (4) FTE cap and (5) Prior Year (FY 2001) RBR that the MAC used to calculate the Hospital FY 2002 IME payment, but also (6) Clinical Research Center beds.

43.    The MAC, CMS, and the Secretary have never challenged the Hospital's position that the Hospital's FY 2002 IME payment was incorrectly low because of the jurisdictionally dismissed matters.  Thus, if the Court were to reverse the improper IME payment-related jurisdictional dismissals, the effect would be to have the Hospital receive the payments for FY 2002 to which it is entitled as a matter of fact and law.

**J.    The Hospital's Right to Judicial Review of the PRRB's Jurisdictional Decisions**

43.    The PRRB's adverse FY 2002 jurisdictional decisions dated May 14, 2014 and February 4, 2016 stated that the Hospital could seek judicial review of the PRRB's jurisdictional denials "upon final disposition of this case."

44.    a.    On April 5, 2016, the Hospital signed a "Full Administrative Resolution" with respect to its FY 2002 PRRB appeal.

        b.      Page three of that Full Administrative Resolutions for the FY 2002 appeal included the following language:

> The parties note that the PRRB's decisions denying jurisdiction for these Issues stated that the Provider could seek judicial review of the PRRB's jurisdictional denials "upon final disposition of this case," which the Provider plans to do in response to the PRRB's expected closing of this case (the Provider understands that the closing of this case constitutes the "final disposition" for purposes of further administrative and judicial review).

45.    The PRRB's April 27, 2016 letter (Exhibit 4 to this Complaint (without enclosures)), which the Hospital received on May 2, 2016, closed the Hospital's FY 2002 appeal. The PRRB's letter stated, in part, that it had ruled that it did not have jurisdiction over the following IME payment-related matters:  (1) IME FTEs – Vacation Time, (2) IME FTEs – Clinical Rotations inadvertently omitted, (3) IME FTEs - Carry-forward of Prior and Penultimate Year, (4) Clinical Research Beds – IME Bed Count, (5) IME FTE cap, and (6) Prior Year IME RBR.  The letter also stated:  "The previous jurisdictional decisions issued by the Board are now final.  Review of the jurisdictional determinations are available under the provisions of 42 U.S.C. § 1395oo(f) and 42 C.F.R. §§ 405.1875."

46.    Because the CMS Administrator has not reviewed the PRRB's jurisdictional decisions in the Hospital's FY 2002 PRRB appeal, the PRRB's April 27, 2016 letter is the final agency action for purposes of judicial review for the Hospital's FY 2002 appeal.

47.    This action is being timely commenced within 60 days after the Hospital's receipt of the PRRB's April 27, 2016 letter, which gave notice of the final disposition of the Hospital's FY 2002 appeal.  *See* 42 U.S.C. §1395oo(f)(1).

## COUNT I
## Judicial Review under the APA and the Medicare Act
## (Decisions are Contrary to Law)

48.     Plaintiff hereby incorporates by reference paragraphs 1 through 47 herein.

49.     The PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction are unlawful and must be reversed because they are procedurally and substantively contrary to the APA, the Medicare Act, and other authorities, including but not limited to various Medicare regulations.  The Hospital validly appealed its FY 2002 IME payment to the PRRB.

50.     The PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction are procedurally and substantively unlawful and must be reversed because they rely on the improper retroactive application of regulations, interpretations, standards, and other authorities, that cannot be validly applied retroactively to the Hospital's FY 2002 PRRB appeal.  The PRRB's decisions also must be reversed because the Hospital met the improper and improperly retroactively applied regulations, interpretations, standards, and other authorities.

51.     The PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction are procedurally and substantively unlawful and must be reversed because they improperly rely as "controlling precedent" on two Seventh Circuit cases that are not binding on the Hospital and do not apply to this action.

52.     The PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction are procedurally and substantively unlawful and must be reversed because they unlawfully deprive the Hospital of its right to appeal a final determination of the Secretary under 42 U.S.C. §1395oo(a) and other authorities.

## COUNT II
## Judicial Review under the APA
## (Decisions are Arbitrary and Capricious)

53.     Plaintiff hereby incorporates by reference paragraphs 1 through 52 herein.

54.     Under 42 U.S.C. §1395oo(f), the PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction are final agency actions that are subject to judicial review under the applicable provisions of the APA.  Under the APA, the reviewing court shall set aside the final agency decision if, *inter alia*, it is contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record.  5 U.S.C. §706.

55.     The PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction are procedurally and substantively arbitrary, capricious, and otherwise unlawful under the APA because they are inconsistent with:

a.      previous decisions of the PRRB and the Secretary;

b.      the PRRB's previous actions in similar appeals, including but not limited to the acceptance of jurisdiction in the Hospital's FYs 1996-1998 PRRB appeals over matters that the PRRB dismissed from the Hospital's FY 2002 appeal; and

c.      the PRRB's governing rules.

The PRRB failed to explain or provide a valid rationale for its inconsistent actions (nor can it validly do so).

56.     The PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction prejudice the Hospital by (i) addressing jurisdiction after the time for corrective reopening had passed and (ii) using the lack of clarity of CMS regulations and guidance as a basis for the jurisdictional dismissals.

Moreover, the PRRB unlawfully and unreasonably asserted jurisdiction over the Hospital's FY 2002 IME payment while rejecting jurisdiction over all of the statistics, matters, and sub-issues necessary to assure that the Hospital's FY 2002 IME payment is correct.  This prejudices the Hospital by, *inter alia*, causing its FY 2002 Medicare IME payment to be incorrectly low under the Medicare Act.

57.     The PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction are procedurally and substantively arbitrary, capricious, and otherwise unlawful under the APA because the PRRB failed to address all of the arguments that the Hospital made to oppose the MAC's jurisdictional challenges. Moreover, the PRRB's decisions result in the Hospital's FY 2002 IME payment being based on incorrect factual data.  The PRRB also unlawfully failed to take into account that the Hospital had relied on the Secretary's guidance when (i) submitting its FY 2002 Medicare as-filed cost report and (ii) filing and pursuing its FY 2002 PRRB appeal.

58.     The PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction are procedurally and substantively arbitrary, capricious, and otherwise unlawful under the APA because the PRRB failed to explain or provide a valid rationale for accepting jurisdiction to correct the Hospital's FY 2002 IME payment, but limiting its jurisdiction to some, but not all, of the statistics, matters, and sub-issues that need to be corrected to assure that the Hospital's FY 2002 IME payment is, in fact, statutorily accurate.

59.     The PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction are thus contrary to law, arbitrary and

capricious, an abuse of discretion, or unsupported by substantial evidence in the record pursuant to 5 U.S.C. §706, and other laws, and must be reversed or set aside.

**COUNT III**
**Arbitrary and Capricious and Unsupported by Substantial Evidence Under the APA**
**(Decisions are Unsupported by the Evidence in the Record)**

60.     Plaintiff hereby incorporates by reference paragraphs 1 through 59 herein.

61.     The PRRB's decisions dismissing the six IME payment-related matters from the Hospital's FY 2002 appeal for alleged lack of jurisdiction must be set aside because they are procedurally and substantively arbitrary, capricious, unsupported by substantial evidence in the record, and otherwise unlawful under the APA because, *inter alia*, the PRRB failed to address all of the arguments that the Hospital made to oppose the MAC's jurisdictional challenges and the PRRB relied on incorrect facts.  The PRRB's decisions are thus contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record pursuant to 5 U.S.C. §706, and other laws, and must be reversed or set aside.

**COUNT IV**
**Mandamus**

62.     Plaintiff hereby incorporates by reference paragraphs 1 through 61 herein.

63.     The PRRB had the non-discretionary duty to apply properly the law relating to its jurisdiction.  The Hospital is entitled to issuance of a writ of mandamus under the Medicare Act and other authorities requiring the PRRB to accept jurisdiction over the six IME payment-related matters that the PRRB improperly dismissed from the Hospital's FY 2002 appeal for alleged lack of jurisdiction.

**Requested Relief**

WHEREFORE, the Hospital requests:

1.      An order reversing the PRRB's May 14, 2014 and February 4, 2016 adverse jurisdictional decisions dismissing six IME payment-related matters in the Hospital's FY 2002 appeal;

2.      An order instructing the Secretary and the PRRB to reinstate the six IME payment-related matters that the PRRB dismissed from the Hospital's FY 2002 appeal for alleged lack of jurisdiction;

3.      An order instructing the Secretary and the MAC to recalculate the Hospital's FY 2002 total Medicare payment after taking into account the six IME payment-related matters that the PRRB improperly dismissed from the Hospital's FY 2002 appeal for alleged lack of jurisdiction, and pay the Hospital the additional amounts due, with interest calculated in accordance with 42 U.S.C. §1395oo(f)(2);

4.      The issuance of a writ of mandamus requiring the Secretary to order (a) the PRRB to accept jurisdiction over the six IME payment-related matters dismissed by the PRRB from the Hospital's FY 2002 appeal for alleged lack of jurisdiction and (b) the MAC to recalculate the Hospital's total Medicare payments due for FY 2002 after taking into account the six IME payment-related matters that the PRRB improperly dismissed from the Hospital's FY 2002 appeal for alleged lack of jurisdiction, and pay the Hospital the additional amounts due, with interest calculated in accordance with 42 U.S.C. §1395oo(f)(2);

5.      An order that the Court shall retain jurisdiction over this action for purposes of enforcement until notice, upon motion of the Hospital, of the Secretary's compliance with this Court's orders, and the PRRB's compliance with all of the remand instructions of the Secretary;

6.      Legal fees and costs of suit incurred by the Hospital; and

7.      Such other relief as this Court may consider appropriate.

DATED: June 23, 2016                    Respectfully submitted,

                                        HOOPER, LUNDY & BOOKMAN, P.C.


                                        By:   /s/ Robert L. Roth
                                              Robert L. Roth, Esq. (D.C. Bar No. 441803)
                                              HOOPER, LUNDY & BOOKMAN, P.C.
                                              401 9th Street, N.W., Suite 550
                                              Washington, D.C.  20004
                                              Tel:  (202) 580-7701
                                              Fax:  (202) 580-7719
                                              Email:  rroth@health-law.com

                                              Attorneys of Record for Plaintiff The University of
                                              Chicago Medical Center